for advisement and call our last case of today in Re Asbestos Products Liability Litigation Number 4, Numbers 14-1715 and 14-1804. Mr. Roven, Mr. Licati, and Ms. Bays, am I pronouncing last name? Yes, Ron. And Mr. Rishot, okay, that's what I, Rishot, okay, Mr. Roven. And unlike my violation of what I just said in the last case, we did go over it once again, he does have a call at 1230, so I really do have to get him there since he's the boss on the call. Wow, that's a first. I'm supposed to just sit there and listen and say yes. Good afternoon, Your Honors. My name is John Roven and I represent Peggy Hassel, the appellant in this case. Her case has been pending in the multi-district litigation for approximately six years. In the last 100 years, no regulation, no case has ever held that the equipment of passenger cars is a statutory appurtenance under the Black Code. I take it what Joseph Rubino did is he somehow thought that, remember, this decision, his decision came out, both in Perry and in this case, came out before Delaware and Hudson. It did. So he's thinking that anything that's attached to a locomotive somehow is an appurtenance. Yes, Your Honor. So you're saying that can't be. It cannot be, Your Honor, because the fundamental flaw in that position is that a car, a passenger car itself, has been ruled as not being under the Locomotive Inspection Act. That's the Terminal Railroad case in 1941. The Supreme Court's decided it. Your argument is very simple. It's not the Rail Car Inspection Act. It's the Locomotive Inspection Act. There's no case that's ever held train-wide preemption. Never, Your Honor. Is it that simple? It's that simple. It's a question of statutory analysis. What didn't happen below that needs to happen on remand, as you argue in your brief, is that the judge needs to get into the nitty-gritty of the facts and let's examine these asbestos pipes and see, you know, are they attached to the locomotive? I assume you'd concede if they are attached to the locomotive, it's at least possible theoretically that those could be deemed a pertinences under the LIA. Is that fair? Well, Judge Hardiman, with all due respect to the Honorable District Judge, locomotives and cars are coupled by automatic couplers, which was discussed in the Delaware and Hudson case. Those are safety appliances. It's true that there are pipes that run under trains. No one denies that, but I don't think anyone would want to ride on one that was connected by pipes. So the question of interconnection was, in fact, the preemption thesis, and that was raised by the defendants, but it was never pled. It simply wasn't a pled fact. The other problem with the question of the interconnection thesis, it runs right into Lunsford, because, as we know, Lunsford was decided after Napier, and what happened in Lunsford was Napier, no question, is probably the most preemptive federal statute that's ever been, and as Justice Kagan said in the current case, it's anachronistic. But after Napier decided that the field of the Locomotive Inspection Act contained the design, construction, and materials of a locomotive, Lunsford refines the question to say, what are those materials? What materials come under Napier? And it's not a pole that someone sticks between two trains, and it's not the little night watchman. And it's not only Lunsford. I mean, there are prior cases from the Supreme Court of Virginia, from the Supreme Judicial Court of Massachusetts, that have all held that a passenger car or a caboose, none of this equipment is regulated under the Locomotive Inspection Act, so it would be anomalous to say that, of heart, an attachment to that piece of equipment would be. Except the radio that's in the caboose that's talking to the locomotive, right? Well, there is a case holding that a radio, it can be under the Locomotive Inspection Act, but, of course, once it's taken out of the train, it's no longer an appurtenance. And, of course, the irony in this case is that Mr. Hassel was working on these passenger cars in a coat shop in Texas 20 or 30 years before, you know, theoretically it was ever attached to a train. But, be that as it may, if we just apply the Lunsford test in this case, Lunsford uses the word attachment. That's the court's word. It's not mine. It says there's two ways to have an appurtenance. One, if the piece is integral or essential to the completed locomotive. Obviously, that's not the case here because locomotives operate on their own. They work in switching yards. They have independent brakes. They move cars around. They're fully capable of operating without a car, without being consigned to a train. Let me ask you this. Let's assume you win on the preemption issue. But don't you still ultimately lose on whether it's futile to amend your complaint here because the Locomotive Inspection Act relates to locomotives. Yes. And the Safety Appliance Act or Acts has a specific list, and this isn't covered on that specific list. Your Honor, the amendment, the request for an amended complaint was obviously an afterthought, and it was based on the defendant's representation that their products were safety appliances. So it's a condition. So you don't need to amend if you win. I don't need to amend if I win because, by definition, if you rule that this is not an appurtenance, then there is no federal interest. Then there is no federal standard of care. It's not a locomotive appurtenance. You don't have to rule that it's not an appurtenance at this point. We just have to decide whether you went outside the pleadings to reach this conclusion. Isn't that correct? Your Honor, that's true. We went after the preemption thesis head-on, but once the judge decided to rule on motion to dismiss, he had to make this finding somewhere. He had to come up with the interconnection thesis somewhere. And because it's not in the pleadings, the only other place he could have come up with it would be argument of counsel or some other. It's a derivative of Perry, isn't it? It's a derivative. Isn't that where this came from? It's, well, the brake shoes are all interconnected, and the pipes seem like the brake shoes, so the same result. Ironically, Judge Hardiman, our case was submitted. First. It was submitted in July of 2012. The motion in Perry wasn't even filed until afterwards. But since you brought up Perry, there's one aspect that I feel is really important to make the Court aware of. I'm not here to argue Perry. It's not my case, and this Court doesn't have to get to the question of whether Perry and the brakes is properly decided to rule in this case. However, the reasoning of the district judge in Perry reveals that there is a problem. This is what he stated in Perry. He said, The authority of the FRA to regulate a specific piece of equipment has been dispositive in LIA preemption analysis, even if that equipment is not integral or essential. So what he did in Perry is he said, Lunsford really doesn't apply anymore as long as the FRA can regulate. That's true if it's a locomotive part. That's true if it's a locomotive part. But the FRA is a very busy agency. They have the Hours of Service Law. They have the FRSA. They have the Safety Appliance Act. They have the Passenger Equipment Safety Standards. They regulate all sorts of equipment, on trains, on rail safety. So the problem was that in Perry, the district judge conflated the FRA's jurisdiction with the test under Lunsford. That's the brilliance of Lunsford. The district judge also relied on Justice Kennedy's decision, which is the Marshall case. And in the Marshall case, what Justice then Judge Kennedy did, was the first thing he did is looked at Lunsford. He says, this was a motorist case. It wasn't an FDLA case. It was a motorist who claimed that they were injured at a crossing because the locomotive needed oscillating lights, that the light wasn't bright enough. What Justice Kennedy did in that case was he looked and said, is this under the Locomotive Inspection Act? And the answer was yes. And the reason it was under the Locomotive Inspection Act is because the locomotive safety standards, the regulations that the FR puts out for LIA said it was. They regulate locomotive lighting. So it was easy. What the plaintiff was claiming, however, was that a better or additional device was needed. In other words, the vindication of the plaintiff's claims would have imposed a state standard of care where the LIA imposed its own care. That's why it was preempted. It wasn't preempted because the FRA had the right to regulate locomotive lights. I mean, so it was under the Act. It was under Part 1 of Lunsford's test. It was contained under the Locomotive Safety Act. Is it actually even an argument that the distinction that was made in Marshall isn't even supported by Lunsford? Indeed, Your Honor. Indeed it is because one of the things that Lunsford says is that only those devices that increase the peril are included under the Locomotive Inspection Act. So devices that are at the end of a train, 30 car lengths away, even if they're somehow theoretically interconnected under a Webster's definition of – I mean, there are all sorts of things that run under trains, but even if they're theoretically interconnected electronically or hot pipes or something, they don't increase the peril of the construction, design, and materials of the locomotive, which is exactly how Napier defined the field. I would suggest we hear from Mr. Rashad and then we get you back on rebuttal if there's anything. I think you've answered at least my questions well. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Joe Rashad appearing on behalf of the Budd Company. Your Honors, I'd like to start with the procedural issue that was raised at the beginning of Mr. Rovin's argument. I would note at the outset that we believe that Mr. Rovin, more specifically Mrs. Hassel, has waived this issue by specifically informing the district court that she agreed that this was a question of law, didn't require any factual development. It's true of silence on that, right? No, actually, Your Honor, in the Joint Appendix, I believe the Court will find at page 77A, this is Section C of Mrs. Hassel's brief, right underneath the reframed questions of law that are presented, these are questions of law for the Court citing a case. And in the actual title of Section C, nothing prevents a final ruling on Budd's motion now. But didn't things change when the district court sort of made it a turn, right? Well, Your Honor, I think I'll defer to Judge Hardiman. You, this morning in the NFL case, mentioned that if you don't bring a motion for reconsideration, you may effectively forfeit the issue. Mrs. Hassel was fully aware that we were bringing this as a principally 12B6 motion, and although we brought it as a Rule 56 motion in case the Court thought there was a need to reach any additional issues, the Court didn't think that there needed to be any additional factual development. The Court didn't convert it to a 56. No, that is correct. And that may have been the mistake, right? It may very well have been, but I don't think that it's one that would require the Court to remand it if we reach the ultimate issue, which is the train-wide preemption question. All right, so you've teed up that legal issue, but you're asking us, as I understand it, to be the first court in the country to hold that the LIA and the SAA combine with one another to create train-wide preemption. That's correct, Your Honor. I think Mr. Rowland focused this morning largely on the idea that somehow Bud is arguing that the LIA itself creates train-wide preemption. Yeah, you can see it doesn't. That is correct, Your Honor. We'd certainly be focusing on whether it's a part or a pertinent at that point. But it's a tall order to ask us to be the first to say that these two combine for train-wide preemption. There have been a heck of a lot of railroad cases out there over the years, and these statutes, at least the LIA, has been around forever. This is true, Your Honor, and so has the SAA. Okay, so why haven't any of the other capable federal judges in the country seen the light on this? Well, Your Honor, I think it comes down to the age, the vintage of the cases that we're relying on. These are cases that just have not been cited, haven't been referenced in the decisions, but they are Supreme Court decisions. And as we see from the Kearns decision, they remain good law, principally because of the special force given to statutory stare decisis. There's an old adage with respect to judges, never decide today what you can decide tomorrow, for tomorrow may not need to be decided. That's true. Somebody else may get to it first. That's true, Your Honor. In Kearns and in our decision in Knoedler, it was clearly part of the locomotive, right? And I remember Knoedler being a little, not having done any railroad work myself, thinking what does this seat cushion have to do with the locomotive? But, well, you know, read the law, it's part of the locomotive. That's true. It would be part of the locomotive and therefore covered under that act. But this is a different fact pattern, as you acknowledge. Exactly right, Your Honor. And if we go back to Southern Railway v. Railroad Commission of Indiana, the U.S. Supreme Court went out of its way to state that the SAA preemption is not limited just to the specific items that are listed in the statute, but rather extends to the entire subject matter of equipping railcars with appliances that are designed for the safety of employees. That is unambiguous, and I think it's important to spend some time on this. Why are these pipe safety measures? Well, the SAA, as I recall, is sort of mind-numbing in its specificity, is it not? It is. It's a very short list, but I guess I'll answer your question and try to draw in the historical context here. The issue is not the pipe itself. The issue is the wrapping of the pipe, and the pipe is designed to act as a safety mechanism. It's a hot pipe. There's going to be steam and hot water going through these things, and so it's designed to make sure that people don't get burned, as well as to not ensure destruction of the pipe itself. So it is a safety issue. It is a safety issue. And it should be on the list, but it's not. But, again, the issue is whether Congress manifested an intent to occupy the field of safety appliances, not necessarily whether it specified each individual safety appliance. It's a fair point, but if it's going to occupy that field, it need not. It's inimical to create a list, because then you're going to get an exclusio unis argument. It's a lot easier to say we're going to preempt this whole field. Anything that has to do with the safety of rail cars is federal. Instead, they gave a list. They made a list. That's true, Your Honor, but I think this goes back to the historical context. I think it's important to spend just a few moments on that. Historically, it's important to note that this case occurred in 1915. It's three years after the Supreme Court, for the very first time in 1912, adopted the doctrine of field preemption, Southern Railway versus Reed. It's three years later, the very same company comes back to the court and says, three years ago, you found in a railroad rate regulation case that that preempted the field with respect to that issue. We're now here dealing with a specific act that deals with safety appliances. We want you to apply the very same doctrine and say that Congress has manifested an intent to deal with the issue of safety of interstate rail transportation with respect to rail cars. And the court could have said, no, we disagree. We're going to say that they've preempted the field on these parts, but they didn't do that. The court went out of its way to say it's not limited to just these parts. It goes to the entirety of the subject matter of that field. Therefore, we need- And why do you need the LIA to conjoin with the SAA? Because I think- The argument you just made sounds like you're saying the SAA preempts this. Well, I think they work in tandem. The Napier decision, the Kearns decision, those are obviously focused on the locomotive. The train itself is generally thought of and conceived of as a locomotive and then the cars that are pulled behind it. The Safety Appliance Act focuses largely on the rail cars. I know that in briefing Mr. Roman has argued that- But can we go outside the specific list? Absolutely, Your Honor. In terms of the fact that it's not an exhaustive list that defines the field. The field itself is any possible safety appliance that could ever be created- So the first step of the trial judge is to ascertain whether something is a safety appliance. If no, no preemption. If yes, field preemption. That's correct, Your Honor. All right. But was that really done here? Was there a factual finding that this is a safety appliance? Well, I don't know that there was a specific finding that it was a safety appliance because the ruling was based under the LIA, but the issue was briefed and Mrs. Hassel did not argue that this was not a safety appliance in the sense that the insulation pipe serves as a safety issue or as a safety component. So I would argue that issue isn't really before the court. The parties have not raised that and put that in dispute. But I would also note this is not an isolated incident. The 1915 decision was followed by 20 years later in Gilvory, another Supreme Court decision, where the court again was addressing the scope of SAA preemption. And although that case was in a slightly different context, whether it preempted a worker's compensation statute, the court again citing back to the Southern Railway versus Indiana decision made it very clear that the statute had very broad preemptive effect. It was not limited just to the issues that are specified, the parts, the appliances that are specified in the statute. And I think it's important to understand the context of that decision because that is a pre-New Deal, pre-reassessment of the scope of the Commerce Clause. And so there was an interstate and intrastate analysis that really drove the distinction in that case. The plaintiff asserted an intrastate injury, and yet the SAA reaches interstate rail cars. So even though it doesn't preempt that area, it's again a reaffirmation by the Supreme Court 20 years later, the field is not limited to what's in the statute. What's proposed by Ms. Hassel is a concept of split preemption. You've got about 20 seconds left. Thank you, Your Honor. I'll be very brief on this issue. Our approach that we're asking the court to adopt is very simple. These two statutes combine. They preempt on the train level the equipment. If we were to – well, let me stop even further. That is an approach that is consistent with national uniformity, right? The approach that's being advocated here by Mrs. Hassel is one that would require or at least permit up to 50 different state regulations of every kind of safety appurtenance and appliance on a railroad. That's an argument in every preemption case. We're familiar with that. Certainly, Your Honor. Anything else you want to add? Yes. Did he say rebuttal? He hasn't given rebuttal. No, but if I may just very briefly address the Lunsford issue. He's got a conference call. I apologize. I hate to do this, but he is really – he's under the gun. Understood. Thank you, Your Honor. Thank you. It's against my nature to actually follow the red light. May it please the Court. Holly Pryor-Bays with Resco Holdings. We are also sued as a rail car manufacturer and joined in Bud's motion to dismiss. My specific issue was whether or not Judge Rubino's denial of the plaintiff's motion for leave to amend their complaint, it was proper or not. And I know that Mr. Rubino – That's been conceded, right? Pardon? That's been conceded, right? I was going to ask that. I'm not sure if it's been conceded, Mr. Rubino. Well, in his answer, he says he's going to rest on prevailing on the merits, and if he prevails on the merits, then he knows he doesn't need to amend. Are you comfortable with that? Well, if the Court finds – I want to ask him if I've correctly interpreted what he said. Okay. If this Court – Yes, okay. If this Court finds preemption, they can still send it back to Judge Rubino on that it was not proper to deny leave to amend, and then he can amend his complaint and pursue these actions that we would say he's not entitled to. So if you're – I guess I can address these arguments, or we can just rest on the papers. I feel good about how it's briefed, or we can address them now. I think the briefs were great. The briefs laid out well. Okay. Thank you. As they say in South Philly, you've done good. A brief comment on the Safety Appliance Act, Your Honors. If this stands – You're anticipating my one question. – and a car pipe is deemed a locomotive of pertinence, then every carman who works out in the Philadelphia yard who's hurt on a car pipe is coming in here telling you that he's been injured. Well, you've knocked down the easier one. I heard him say it's a safety appliance, not a locomotive of pertinence. Either one would work, but you're correct, Your Honor. Forgive me. The real problem they have on the Safety Appliance Act is there's just a mountain of authority that this is a very specific act. It's a laundry list act. Appendix A to 49 CFR Section 231 contains a list of every safety appliance, and this isn't in it. But more relevant than that is the Scarlett case that the Supreme Court has already decided. They're all in the Wayback Machine, aren't they? Yeah. A car part that's not a safety appliance, you've got a common law remedy for it, and so is this court and patent. So where they want this court to go would just – you'd have a Hobson's choice. Either split the act and say that it's one act for defendants claiming preemption and it's another act for plaintiffs claiming violation of statute, or just have bad precedent saying that a pipe on a car is part of the Locomotive Inspection Act or the Safety Appliance Act. Neither one is a good result. Thank you very much. Thank you very much. Thank you to all counsel. And I promise all of you, if you come back again, we will ignore the red light. We appreciate it. Thank you.